UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DENISE BARTHOLEMEW d/b/a**<br>**A+ BAIL BOND OF LOUISIANA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-4165** |
| **BAIL BONDS UNLIMITED, INC., A.K.A**<br>**"BBU", ET AL.** | **SECTION: "K"(2)** |

## ORDER AND REASONS

Before the Court is Defendant Sheriff Harry Lee's[1] ("Defendant") Motion to Dismiss pursuant to Rule 12(b)(6). (Rec. Doc. 64) ("Mot."). Plaintiff Denise Bartholemew ("Plaintiff") has opposed the motion. (Rec. Doc. 65) ("Opp."). For the reasons set forth herein, the Court will grant the Defendant's motion in part, and deny it in part.

**BACKGROUND AND ANALYSIS**

This suit arises out of a cause of action filed by Plaintiff who does business as the sole proprietor of A+ Bail Bonds of Louisiana in Gretna, Louisiana. Plaintiff alleges civil rights violations under 42 U.S.C. § 1983, civil RICO claims, Sherman Anti-Trust violations, and pendant state law causes of action centering around the activities of defendants Louis and Lori Marcotte, and their bail bonding company, Bail Bonds Unlimited ("BBU"). The Plaintiff alleges that the Marcottes, the alter ego for their company, BBU, acted in concert with other named defendants to obtain a monopoly in the bail bond industry for the geographical region of

---

[1] Since the filing of this motion, Sheriff Lee died. Newell Normand was subsequently elected to the office. The Court will presume that Plaintiff intends on substituting Sheriff Norman in Sheriff Lee's place at a later date.

1

Jefferson Parish, Louisiana.  The suit arises from a federal investigation that was conducted into suspected bribery and corruption of prison employees and judges by bail bondsmen seeking privileged access to prisoners in order to secure their bonds before other bondsmen had the opportunity to do so.  Subsequent to the federal investigation, Plaintiff brought the present suit against various defendants including Defendant Sheriff Harry Lee, sheriff of Jefferson Parish during the relevant period, who was "custodian of all prisoners booked into Jefferson Parish Sheriff's Office Jails."  Complaint at 73 (Rec. Doc. 1) ("Compl.").  Defendant moves for dismissal of all claims asserted against him.

      The standard for dismissal under Federal Rule of Civil Procedure 12(b)(6) has been refined by the Supreme Court:  "Under Rule 12(b)(6), a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief."  *Lane ex rel. Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008), *citing Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1965-66, 167 L.Ed.2d 929 (2007).  *Twombly* distinguished between allegations of the possible or "conceivable," and those allegations that are "plausible."  *Twombly*, 127 S.Ct. at 1974.  Thus, mere possibility is not sufficient to survive a 12(b)(6) motion; the pleadings must plead adequate facts "to state a claim of relief that is plausible on its face."  *Id.*  This Court will "accept the plaintiff's all well-pleaded facts as true and view them in the light most favorable to the plaintiff."  *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 237 (5th Cir. 2007).

**A.  Prescription of State Law and Civil Rights Claims**

      Defendant seeks dismissal of the state law claims and § 1983 federal civil rights claims

on the basis of prescription. This Court has previously considered the same grounds for dismissal by other defendants, and it has found that the state law claims and federal civil rights claims are prescribed under the one-year prescriptive period set forth in Louisiana Civil Code Article 3492.[2] *See* Order and Reasons (Aug. 30, 2006) (Rec. Doc. 41). There is no different result that is prompted by the allegations against the particular Defendant here. Accordingly, the Court will dismiss Plaintiff's state law claims for violations of Louisiana Constitution of 1974, the Declaration of Rights, the Equal Protection and Due Process Clauses, and La. Rev. Stat. § 51:123, as well as Plaintiff's federal § 1983 claims, as prescribed.

## B. Sherman Anti-Trust Act and RICO Allegations

Defendant also seeks dismissal of the claims under the Sherman Anti-Trust Act and those under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). He asserts that the Plaintiff's allegations against him are insufficiently detailed to survive a motion to dismiss because they do not "establish a predicate act by Sheriff Lee undertaken in furtherance of a conspiracy to restrain trade," and because the allegations "lack any factual substance to support a

---

[2]Article 3492 provides:

> Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.

La. Civ. Code art. 3492. Article 3492 applies equally to actions under 42 U.S.C. § 1983. *See Bourdais v. New Orleans City*, 485 F.3d 294, 298 (5th Cir. 2007) ("In § 1983 claims, the applicable statute of limitations is that which the state would apply in an analogous action in its courts.").

civil RICO claim against Sheriff Lee." Mot. at 4.

The Defendant asserts that Plaintiff has failed to state a claim for antitrust conspiracy under the Sherman Act, which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. Defendant also claims that Plaintiff does not adequately plead a claim under RICO, 18 U.S.C. § 1962(a), (b), (c), and (d). Section 1964 of Title 18 permits "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . and shall recover threefold the damages he sustains and the costs of the suit, including a reasonable attorney's fee . . . ." 18 U.S.C. § 1964(c). "Regardless of the subsection, RICO claims under § 1962 have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected with the acquisition, establishment, conduct, or control of an enterprise.'" *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007), *quoting Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996). "[T]he causal language of § 1964(c) requires that the compensable injury stem directly from the violation of the RICO section in question." *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 930 (5th Cir. 2002). With regards to pleading RICO civil conspiracy, "because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995) (citation omitted).

Defendant's specific point of contention here is that Plaintiff has failed to "establish a predicate act by Sheriff Lee undertaken in furtherance of a conspiracy to restrain trade." Mot. at 4. This objection first implicates the RICO requirement of pleading a pattern of racketeering

activity.  As explained by the Fifth Circuit, "'[r]acketeering activity' consists of two or more predicate criminal acts that are (1) related and (2) 'amount to or pose a threat of continued criminal activity.'" *Abraham*, 480 F.3d at 355, *quoting Word of Faith*, 90 F.3d at 122. Moreover, Defendant asserts that "[a] complaint containing only conclusory allegations of conspiracy, without factual allegations sufficient to support the essential elements of such a claim, cannot survive a motion to dismiss."  Mot. at 5.

   Plaintiff's allegations specific to Defendant Harry Lee are as follows.  Plaintiff states that Defendant "associated with the RICO and the Criminal Conspiracy and Enterprise" by "fail[ing] to notice the manipulation of the powers of attorney . . . [and] failing to notice that through a pattern of racketeering, with acts of bribery among the law enforcement agents employed by him . . . amounted to aiding and abetting the objects and goals of the [RICO enterprise]."  Compl. ¶¶ 42-44.  Plaintiff further claims that the Defendant "in order to aid and abet the RICO Criminal Enterprise . . . did prohibit Justice of the Peace from processing Arrestees [in order to determine] whether or not certain Arrestees were eligible for Personal Recognizance Bail Bonds."  Compl. ¶ 45.  The Defendant allegedly delayed the appearance of arrestees in order to allow Bail Bonds Unlimited exclusive access to them prior to their appearance.  *Id.*  Plaintiff further includes in her Complaint a letter sent by the Defendant to a Jefferson Parish judge, Walter Rothschild, recommending that "commercial bonding companies should have first crack at arrestees before the Magistrates release them on their own recognizance."  Compl. at 24.  The Defendant's letter was apparently prompted by a letter from Louis Marcotte, one of the named defendants herein who has pleaded guilty to criminal charges.  The Defendant's letter to Judge Rothschild states that he "do[es] not favor any bonding agency over any other," but Plaintiff claims that Louis

Marcotte was the only commercial bail bondsman that received a copy of this letter. *Id.* Plaintiff claims that the Defendant knew, at all relevant times, that his employees were being bribed by BBU's bondsmen in order to prevent any other company's bondsmen from having access to arrestees. Compl. ¶ 48. Finally, the Plaintiff's amended complaint, she asserts that the Defendant, in return for "excessive political contributions," made an agreement with Marcotte to issue an order to the staff of Jefferson Parish Jail to prevent Justice Wilty from accessing prisoners before BBU could secure their bonds. Amended Complaint ¶ 51.1(b) (Rec. Doc. 38).

The Court finds that, at this time, the allegations above state a plausible claim against the Defendant for RICO offenses. Specifically regarding the RICO predicate acts, Plaintiff has sufficiently alleged that the Defendant committed at least two predicate acts: on numerous occasions he received bribes from the Marcottes in return for giving them access to prisoners in violation of 18 U.S.C. § 4 (misprison of a felony) and La. Rev. Stat. § 14:118 (public bribery); and that he sent a letter to Judge Rothschild that recommended that commercial bonding companies should have early access to arrestees before the Magistrates released them on their own recognizance, in violation of 18 U.S.C. §§ 1341 and 1346 (mail fraud).[3] Plaintiff's RICO Statement at 172-74, 178 (Rec. Doc. 32). Defendant claims that the second alleged predicate act was not done for the purpose of restraining trade because the letter states that the Defendant does not favor any bonding company over another. However, Plaintiff asserts that the Defendant copied this letter solely to Marcotte, suggesting that Marcotte would be the only bail bondsman with the knowledge that commercial bonding companies would have access to prisoners before

---

[3]*See In re Mastercard Int'l Inc.*, 313 F.3d 257, 262 (5th Cir. 2002) ("The predicate acts [for a RICO claim] can be either state or federal crimes.").

they appeared before the magistrates.  The Court finds that these predicate acts were sufficiently related to each other as they both appear to further the alleged scheme to allow BBU's bondsmen privileged access to arrestees.  *See Word of Faith*, 90 F.3d at 122 ("The element of relatedness is established if the acts have the 'same or similar purposes, results, participants, victims, or methods of commission.'") (quoting *H.J. Inc. v. Northwestern Bell Tel., Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989)).  These acts also suggest continuity of action that "are a regular way of conducting the defendant's ongoing legitimate business," considering the alleged scheme depended on Jefferson Parish officers regularly preventing magistrates and other competing commercial bonding companies from accessing prisoners before BBU's bondsmen could secure their bonds.  *See Abraham*, 480 F.3d at 355 (citing *H.J. Inc.*, 492 U.S. at 242-43, 109 S.Ct. at 2902).

The Court likewise finds that the Plaintiff's allegation is adequate to survive a motion to dismiss considering that the amended complaint alleges a quid pro quo agreement between Marcotte and the Defendant in order to allow BBU's bondsmen privileged access to prisoners before their appearance before a magistrate.  The Court finds that this allegation indeed is specific enough to establish a RICO conspiratorial agreement, and moreover it is adequate to allege an agreement to restrain trade under the Sherman Act considering the goal and effect of the agreement was to prevent other commercial bondsmen from competing with BBU.[4]  The

---

[4]Plaintiff asserts that her claim under the Sherman Act should not be barred by the *Noerr-Pennington* doctrine due to the "sham exception" to that doctrine.  *Noerr-Pennington* generally holds that federal antitrust laws do not regulated the conduct of private individuals in seeking anticompetitive action from the government.  The Court notes, however, that *Noerr-Pennington* was not raised by the Defendant here, possibly because it is unavailable to him.  *See Empress LLC v. City & County of San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005) ("Furthermore, there is no 'conspiracy exception to the *Noerr-Pennington* doctrine that applies when

Court notes, however, that while the Plaintiff's complaint sufficiently clears the plausibility hurdle of *Twombly*, summary judgment has a higher standard of proof which may not be fulfilled by the Plaintiff based solely on the allegations stated herein.  Moreover, this motion was directed solely towards the predicate acts, other elements of RICO were not addressed by Defendant's motion such as whether a RICO enterprise has been adequately pleaded.  The Court suggests that these issues be addressed by appropriate motion.

**CONCLUSION**

For the reasons stated herein, accordingly,

**IT IS ORDERED** that Defendant Sheriff Harry Lee's Motion to Dismiss (Rec. Doc. 64) is **GRANTED IN PART AND DENIED IN PART.**  The Plaintiff's allegations against Defendant Sheriff Harry Lee concerning violations of the Sherman Act and the RICO Act shall remain.  All other allegations against Defendant Sheriff Harry Lee for violations of Louisiana state law and pursuant to 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this __17th__ day of September, 2008.

_____
**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE**

---

government officials conspire with a private party to employ government action as a means of depriving other parties of their federal constitutional or statutory rights.  In such circumstances, a remedy lies only against the conspiring government officials, not against the private citizens.") (internal citation omitted).  However, this Court reserves any decision regarding the availability of *Noerr-Pennington* as a defense to Defendant Harry Lee.